Peter K. SWITZER, Plaintiff–Appellant,

v.

John T. HART and J. Gregory Bartels,
Defendants–Respondents.

No. 72124.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 16, 1997.

Alan G. Gerson, James M. Niemann, Blumenfeld, Kaplan & Sandweiss, St. Louis, for plaintiff–appellant.

Donald L. James, T. Michael Ward, Brown & James, P.C., St. Louis, for J. Gregory Bartels.

Clark H. Cole, Patrick J. Kenny, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for John T. Hart.

HOFF, Judge.

Peter K. Switzer (Peter) appeals from an order and judgment dismissing all of Peter's claims for damages by sustaining motions to dismiss filed by John T. Hart and J. Gregory Bartels (Respondents).[1] We affirm based on Peter's lack of standing.

This case focuses on certain terms of the Last Will and Testament of Catherine Hart (Catherine's will). In Catherine's will a trust was created that took effect, in relevant part, when her husband Luke E. Hart died in 1964. In general, the trust had four parts which are referred to as Share A, Share B, Share C, and Share D. Two of those shares, Share A pertaining to one of Catherine Hart's daughters, Catherine Switzer, and Share C pertaining to one of Catherine Hart's sons, Luke E. Hart, Jr. (Luke), are pertinent to this case. Peter was adopted by Catherine Switzer and then, after her death, by Luke.

After Luke's death in 1994 Peter filed this lawsuit against the trustees of the trust, Respondents, seeking damages for their breach of fiduciary duty (Counts I and III of the Petition) and breach of contract (Counts II and IV of the Petition). Peter alleges Respondents dissipated the trust estate created through Catherine's will and have failed to provide Peter with any distributions to which he is entitled under the trust. Counts I and II of Peter's Petition are based on allegations that Peter is the sole beneficiary of Share C. Counts III and IV of Peter's Petition are based on allegations that Peter is entitled to a one-seventh portion of Share C.

---

1. The trial court's order and judgment also denied as moot Hart's motion to strike jury demand and Bartels' motion for more definite statement. *Those rulings are not the subject of this appeal and will not be further addressed by this Court.*

■ Respondents moved to dismiss the lawsuit in relevant part on two grounds. First, Respondents contended Peter was excluded from taking under the trust because his adoption by Luke did not make Peter a "child[ ] of [Luke's] body," as intended by Catherine Hart, and so Peter was not the sole beneficiary of Share C. Second, Respondents urged Luke's adoption of Peter excluded Peter from the class of Catherine Hart's grandchildren defined in Provision First of Catherine's will depriving Peter of membership in the residuary beneficiary class under Share C. In sustaining Respondents' motions to dismiss, the trial court expressly stated Peter "lacks standing to bring this action under Share C."[2] The trial court did not mention in the order and judgment what standard it applied in resolving either the motions or the standing issue. This appeal followed. We will address the two points on appeal in reverse order because the second point raises questions about the proper standard for addressing standing issues.

In his second point, Peter urges the trial court applied the wrong standard in resolving Respondents' motions to dismiss. Respondents counter that the point preserves nothing for review due to non-compliance with Rule 84.04(d). Respondent Hart also moves to dismiss the point due to that noncompliance. The request for dismissal is denied.

■■ This point lacks merit. First, we assume the trial court knew and applied the correct standard when the trial court is silent as to the standard it used. *In the Interest of I.M.B.*, 897 S.W.2d 146, 150 (Mo.App. W.D. 1995). Additionally, this Court reviews whether or not Peter has standing to pursue his claims under Share C *de novo* and does not defer to the trial court's order. *Switzer v. Mercantile Bank of St. Louis, N.A.*, 932 S.W.2d 893, 896 (Mo.App. E.D.1996). There-

fore, the standard the trial court used in reaching its decision is not determinative of whether this Court should uphold the trial court's decision to dismiss Peter's claim regarding Share C for lack of standing. Peter's second point is denied.

In his first point, Peter contends the trial court erred in dismissing his claim under Share C for lack of standing because he had alleged facts demonstrating he is a beneficiary of Catherine's will, either as a child of the body of Luke or as Catherine's grandchild. Peter also argues he is not specifically excluded from inheriting under Catherine's will.

■■■ To have standing to sue, a plaintiff must have an interest in the subject of the lawsuit which, if valid, gives plaintiff a right to relief. *Id.* Here, Peter alleges he has standing as a beneficiary under Catherine's will. His petition may be dismissed only if it appears he is unable to prove any set of facts which would make him a beneficiary under Catherine's will. *Id.* To ascertain whether Peter may be a beneficiary, we consider the petition, along with any "additional non-contested facts which all parties accepted as true at the time of argument on the motion to dismiss." *Id.* (internal quotation marks omitted) (quoting *Hinton v. City of St. Joseph*, 889 S.W.2d 854, 857 (Mo.App. W.D.1994)). We then engage in a summary judgment mode of analysis to determine whether standing is resolved "as a matter of law on the basis of the undisputed facts." *Id.* (internal quotation marks omitted) (quoting *Hinton*, 889 S.W.2d at 857).

The undisputed facts are as follows. Peter was born in 1943 and first adopted by Catherine Switzer and her husband. In 1982, after the death of Peter's first adoptive parents, Catherine Switzer's brother Luke adopted Peter.

Catherine Hart (Testatrix), the mother of Catherine Switzer and Luke, died in May 1951. Catherine's will, dated January 7,

2. The order and judgment also stated "any claims arising and asserted by [Peter] under Share A of the Trust created under the Last Will and Testament of Catherine J. Hart are barred by the Statute of Limitations. Sec. 456.220 RSMo. 1994." Although Peter notes in his statement of facts that "there was no conceivable basis for entry of such an order," no point on appeal addresses any error in this part of the trial

court's order and judgment. Because Peter failed to present his contention that the trial court erred in resolving any issue regarding Share A as a point on appeal, that contention is deemed abandoned for purposes of this appeal and will not be addressed by this Court. *Boyer v. Grandview Manor Care Ctr., Inc.*, 793 S.W.2d 346, 347 (Mo. banc 1990); *Hedrick v. Chrysler Corp.*, 900 S.W.2d 233, 235 (Mo.App. E.D.1995).

1951, created a trust and provided in relevant part as follows:

*Provision First: For the purposes of this will I recognize as* my children, Marie H. Wesseling, Luke E. Hart, Jr., Catherine J. Switzer and John T. Hart and as their children and *my grandchildren only the heirs of their bodies and Paul Switzer and Peter Switzer, legally adopted children of said Catherine J. Switzer. Other children who may hereafter be adopted by either of my said children are hereby excluded and they shall not have any benefits under this will.*

*Provision Second:* I give and bequeath to my grandchildren, Susan, Paul and Peter Switzer and Sally Ann Hart and to other of my grandchildren that may be hereafter born, my love and affection and I express the sincere hope that they will grow up to become useful men and women and devout adherents of the Roman Catholic faith.

\* \* \* \* \* \*

*Provision Fifth:* All the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, of whatsoever kind and wherever situated, I give and bequeath to Jerome A. Switzer, John T. Hart and James E. Wesseling, as Trustees,[3] to have and to hold the same in trust for the uses and purposes and with the powers and duties following, to wit:

\* \* \* \* \* \*

(d) Upon the death of my ... husband [Luke E. Hart], or in the event he shall predecease me, then upon my death, the Trustees shall divide the Trust Estate into four equal shares, herein referred to as Shares A, B, C and D, respectively, which shall be distributed or retained and held by them, as follows:

1. If my ... daughter Catherine J. Switzer is then living said Share A shall be paid to her at once, free of trust. But if she shall not be living, then said Share A and the accumulated net income derived therefrom shall be paid to the children of her body and said Paul Switzer and Peter Switzer in equal shares, free of trust, upon their attaining the age of twenty-one years, respectively.

\* \* \* \* \* \*

3. If my ... son Luke E. Hart, Jr., is then living, said Share C shall be retained and held by the Trustees and the entire net income therefrom shall be paid over and distributed to him in equal quarter-annual or other more frequent and convenient installments so long as he shall live, and *at his death the Trustees* shall pay from said share the expenses of his last illness and burial and also for the erection of a marker over his grave at a cost amounting in the aggregate to not more than Five Hundred Dollars ($500.00) and *shall pay over and distribute the remainder [of Share C], and the accumulated net income derived therefrom to the children of his body,* if any, in equal shares, free of trust, upon their attaining the age of twenty-one years, respectively, *or, if he have no child or children of his body, to my then living grandchildren as described in Provision First* in equal shares, free of trust, upon their attaining the age of twenty-one years, respectively.

In the event that my ... son Luke E. Hart, Jr. shall not be living but he shall be survived by a child or children of his body who are then living, said Share C and the accumulated net income therefrom shall be paid to his said child or children in equal shares, free of trust, upon their attaining the age of twenty-one years, respectively.

In the event that my ... son Luke E. Hart, Jr. shall not be living and shall not be survived by a child or children of his body, then this provision shall be wholly inoperative and thereupon said Share C, intended to be thereby disposed of, shall be added to and become a part of the remaining shares.

(emphasis and footnote added).

■ In relevant part Testatrix was followed in death by her daughter Catherine

---

3. It is not disputed that Respondents John T. Hart and J. Gregory Bartels are the present trustees.

Switzer; then her husband, Luke E. Hart, who died in 1964; and then her son, Luke, who died in 1994. When Luke died, the following relevant individuals were alive: Peter; Catherine Switzer's children (Susan Switzer Fons and Paul Switzer); and the four children of Catherine Hart's other son, John T. Hart (Sally A. Hart, John T. Hart, Jr., Daniel S. Hart, and William L. Hart).[4]

Peter contends he is either entitled to all of Share C as the only child of Luke or entitled to a portion of Share C as one of Catherine Hart's seven grandchildren living at the time of Luke's death. Peter also contends the terms of Catherine's will do not expressly exclude him from taking all or part of Share C.

 While the law in effect at the time a will is executed may be significant in determining whether or not an adopted person falls within a class of beneficiaries,[5] it is the testatrix's intent that prevails in construing the terms of a will to ascertain whether an adopted child is a beneficiary. *First Nat'l Bank v. Sullivan*, 394 S.W.2d 273, 280–81 (Mo.1965) (whether adopted person was a beneficiary under the phrases "heir of the body" and "heir at law"); *Switzer*, 932 S.W.2d at 896 (whether adopted person was a beneficiary under the phrase "children of his body"); *Boatmen's Trust Co. v. Conklin*, 888 S.W.2d 347, 351 (Mo.App. E.D.1994) (whether adopted persons were beneficiaries under the term "issue"); *see First Nat'l Bank v. Waldron*, 406 S.W.2d 56, 59 (Mo.1966) (whether adopted persons were beneficiaries under the phrase "and their children, born in lawful wedlock" in a deed creating a trust estate). As the Missouri Supreme Court has

noted, "[a] testator's intention with respect to who shall be included or excluded from a designated class may be altogether different from that which the law provides. " *Sullivan*, 394 S.W.2d at 281. Therefore, a phrase consisting of words having "a well-known technical meaning should be construed according to th[at] technical meaning unless a contrary meaning clearly appears from the context of the will. " *St. Louis Union Trust Co. v. Kaltenbach*, 353 Mo. 1114, 186 S.W.2d 578, 582 (1945) (construing the phrase "descend") (internal quotation marks omitted) (quoting *Gardner v. Vanlandingham*, 334 Mo. 1054, 69 S.W.2d 947, 950 (1934)).

 Here, while Peter did become an heir of Luke's body through the 1982 adoption,[6] the language of Catherine's will indicates she did not intend Peter to take any part of Share C. In her will, Catherine consistently distinguishes between children or heirs "of [the] body" of her children and Peter and Paul Switzer, who were Catherine Switzer's adopted children at the time Catherine's will was executed. *See* Provision First of Catherine's will (recognizing as her grandchildren both the heirs of her children's bodies "and Paul Switzer and Peter Switzer, legally adopted children of" Catherine Switzer) and paragraph (d)(1) of Provision Fifth of Catherine's will (providing for distribution to "the children of [Catherine Switzer's] body and said Paul Switzer and Peter Switzer"). Therefore, Catherine intended references to the children or heirs "of [the] body" to encompass only biological children, not adopted children. Because Peter was an adopted, rather than a biological, child of Luke, Peter

**4.** Catherine Hart's other daughter, Marie Wesseling, died without surviving children.

**5.** *First Nat'l Bank v. Sullivan*, 394 S.W.2d 273, 280–81 (Mo.1965) (whether an adopted grandchild of testator was an "heir of the body" was to be determined by the law in effect at the time the will was executed, unless a different intent of the testator was evident). When Catherine's will was executed on January 7, 1951, the law included adopted children within the phrase "heirs of the body." Section 453.090.4 RSMo 1949 ("Said adopted child shall be capable of inheriting from and taking through his parent or parents by adoption property limited expressly to heirs of the body of such parent or parents by

adoption"). In *Switzer* we found that, as a matter of law, Luke's adoption of Peter in 1982 made Peter an heir of Luke's body under section 453.090.4 RSMo 1959. *Switzer*, 932 S.W.2d at 897. The 1959 statute applicable in *Switzer* and the 1949 statute applicable here are identical. In light of the earlier *Switzer* decision regarding the effect of Peter's 1982 adoption on Peter's status as an heir of Luke's body, Luke's adoption of Peter in 1982 made Peter an heir of Luke's body under section 453.090.4 RSMo 1949 for purposes of this appeal.

**6.** *Switzer*, 932 S.W.2d at 896–97.

cannot take Share C as the only "child . . . of [the] body" of Luke.

 Furthermore, the express prohibition against subsequently adopted "[o]ther children" taking "*any* benefits under th[e] will" (emphasis added) as set forth in Provision First of Catherine's will is not ambiguous and clearly precludes Peter from taking under Catherine's will due to his subsequent adoption by Luke. Peter urges that Testatrix's use of the word "[o]ther" indicates that she did not exclude Peter and Paul Switzer from a distribution under Catherine's will if they were subsequently adopted by one of Catherine Switzer's siblings. As we found in the earlier *Switzer* case, however, "[w]e believe the plain meaning and intention of [Catherine's] will was to exclude all children who would be adopted after the execution of the will. We do not believe [Testatrix] intended to allow [Peter] a window of opportunity to become a beneficiary" twice, for example, once as Catherine Switzer's adopted son and again as Luke's adopted son. *See Switzer*, 932 S.W.2d at 897.

 Peter argues Catherine's will is distinct from her husband's will which was at issue in the earlier *Switzer* case, making this Court's interpretation of the clause excluding subsequently adopted grandchildren in the *Switzer* decision inapplicable here. Specifically, Peter urges Testatrix left her grandchildren through Catherine Switzer certain property in addition to her express bequest that they receive only her "love and affection." On the other hand, Peter notes, Testatrix's husband expressly gave the grandchildren through Catherine Switzer only his "love and affection" and then gave only one of those grandchildren, Susan Switzer Fons, an express bequest of property.[7] *Compare* Provisions Second and Fifth(d)(1) of Catherine's will, quoted above, *with* Provisions Tenth and Thirteen(c)(2) of Luke E. Hart's

will, set forth at *Switzer*, 932 S.W.2d at 896 and 895, respectively.

While we concur that Catherine's will and her husband's will, which was at issue in the earlier *Switzer* case, do not contain identical property bequests, we find our interpretation in *Switzer* of the identical provision excluding subsequently adopted children apposite here. In the earlier *Switzer* case the testator treated all of Catherine Switzer's then-adopted children the same by excluding them from taking property under Catherine Switzer's share. Here, Testatrix treated all of Catherine Switzer's then-adopted children the same by including them as equal beneficiaries of Catherine Switzer's share. Because the testator in *Switzer* and Testatrix here both treated Catherine Switzer's then-adopted children the same, despite differences in the bequests of property to those children, and because both testators used the identical sentence to exclude any child's subsequently adopted children from any bequest, the earlier *Switzer* interpretation of that exclusionary sentence is applicable here.

 Moreover, it is clear Testatrix intended Peter to take any residuary trust benefit only as Catherine Switzer's legally adopted son and not as an adopted grandchild regardless of who was the adoptive parent. In Provision First, Testatrix identified Peter as one of her "grandchildren" by stating he was a "legally adopted child[ ] of . . . Catherine J. Switzer," rather than by stating he was one of two "legally adopted children of" Testatrix's children. Additionally, whenever Testatrix referred generally to her grandchildren who would take as residuary beneficiaries of the trust, she referred to her "then living grandchildren *as described in Provision First*" (emphasis added).[8] Therefore, when Peter lost his status as the legally adopted child of Catherine Switzer, by becoming the legally adopted son of Luke in

---

7. Peter makes a similar argument regarding Testatrix's and her husband's bequests of any remainder or residuary estate. We are unable to address that argument because neither the record presented in this case nor the earlier *Switzer* decision sets forth the complete provisions of Luke E. Hart's will. Therefore, we cannot ascertain what, if any, provision Luke E. Hart's will made for any remainder or residuary estate.

8. Notably, this language is different from language Testatrix used when giving her grandchildren her "love and affection." *See* Provision Second quoted above. In that instance, she named each of the then-living grandchildren ("Susan, Paul and Peter Switzer and Sally Ann Hart") without reference to their parents.

1982, Peter lost his status as a grandchild of Catherine *as identified in Provision First of Catherine's will.*

Under these circumstances, Peter is neither the sole beneficiary nor a residuary beneficiary under Share C of the trust created by Catherine's will. Accordingly, Peter is not entitled to relief and lacks standing to pursue his claims for relief based upon Share C. Point denied.

The trial court's order and judgment is affirmed.

ROBERT G. DOWD, Jr., P.J., and SIMON, J., concur.